(No. 90-CC-0361-)

*In re* APPLICATION OF KARIN L. DEGELMAN.

*Opinion filed May 23, 1995.*
*Order filed August 16, 1995.*

HERRING & HOCHE (WILLIAM HERRING, of counsel), for Claimant.

JIM RYAN, Attorney General (DEBORAH BARNES, Assistant Attorney General, of counsel), for Respondent.

OPINION

FREDERICK, J.

This cause comes before the Court on Claimant's motion for summary judgment and Respondent's cross motion for summary judgment. The Court has carefully reviewed the motions, the briefs in support of the cross motions for summary judgment, all of the pleadings, all of the exhibits, the application for benefits, and the entire Court file.

This claim is before the Court by reason of the death of Gary K. Degelman, who was a special agent with the Illinois State Police. Agent Degelman's widow, Karin L. Degelman, seeks compensation pursuant to the terms and provisions of the Law Enforcement Officers and Firemen Compensation Act. 820 ILCS 315/1 *et seq.*

The report of the Attorney General filed April 13, 1992, indicated that Special Agent Degelman died within one year of receiving injuries he sustained in a fall from the bed of a moving pick-up truck on May 4, 1989. Claimant, Karin L. Degelman, the widow of the decedent, is the designated beneficiary of Gary R. Degelman. The report also indicated that Special Agent Degelman's death was not the result of willful misconduct or intoxication. The only contested issue was whether Special Agent Degelman was killed in the line of duty as defined by the

Act. Section 2(e) of the Act provides a definition of "killed in the line of duty" as follows:

"(e) 'Killed in the line of duty' means losing one's life as a result of injury received in the active performance of duties as law enforcement officer, civil defense worker, civil air patrol member, paramedic or fireman if the death occurs within one year from the date the injury was received and if that injury arose from violence or other accidental cause."

This case comes before the Court in the posture of cross summary judgment motions. The issue of whether a policeman was killed in the line of duty is an often-heard issue in this Court and is perhaps the hardest issue this Court must consider. In every case a policeman has died and generally his widow or children are seeking benefits under the Act. It is very difficult not to be sympathetic to the Claimants in these cases but as a Court, the case law is clear that the issues are to be decided based on the facts of each case, and we as a Court put sympathy aside.

This case is particularly difficult. The report of the Attorney General indicated the following facts which are not in dispute: On May 4, 1989, shortly after 4:00 p.m., Gary R. Degelman, a special agent with the Illinois State Police, was riding in a bed of a pick-up truck owned by the State Police and being driven by acting Master Sergeant James K. Comrie. At that time, Special Agent Degelman was on his normal duty shift and was dressed in civilian clothes which was his normal duty attire. At the time of the fall resulting in his death, Special Agent Degelman and acting Master Sergeant Comrie were engaged in moving household goods belonging to Captain William R. Collins, zone commander of Division of Criminal Investigations zone 14. The household goods were being moved from Collins' residence at 10 Richmond Road, to 108 Borsi in Macomb, Illinois. This move was done using a state-owned vehicle and on-duty State employees, in apparent violation of rules and regulations of

the Illinois State Police. Collins was the supervisor of both Degelman and Comrie. The Attorney General believed there was conflicting evidence whether, at the time of the fall, Special Agent Degelman was engaged in a narcotics surveillance in the vicinity of Collins' residence at 10 Richmond Road. It is the opinion of the Attorney General, after investigation of the facts and circumstances of Special Agent Degelman's death, that at the time of the fall Special Agent Degelman and acting Master Sergeant Comrie had terminated any involvement they may have had in narcotics surveillance and were solely engaged in transporting the household goods of Captain Collins for the use and benefit of Captain Collins. The Attorney General believed that at the time of the fall, Special Agent Degelman was not engaged in any law enforcement activity which would place him in the line of duty as defined by section 2(e) of the Act. The evidence indicates that immediately prior to his fall, Special Agent Degelman was standing in the bed of a moving pick-up truck guarding metal shelving units belonging to Captain Collins so that they would not fall from the truck as they had earlier.

Claimant has presented, with her motion, testimony of witnesses relating to the material facts of this matter given in a hearing before the United States Department of Justice with respect to an application for public safety officers benefits. The findings of hearing officer Eugene A. Dzikiewicz in the appeal regarding the initial denial of paying public safety officers benefits (28 C.F.R. 32.2c) were that "It is clear that at the time of the accident which resulted in his death, Special Agent Degelman was involved in an activity which clearly fits within the definition 'Line of Duty' as set forth in 28 C.F.R. 32.2(c)." The Public Safety Officers Benefits Act requires that an officer's death result from a line of duty action that he or she

is authorized or obligated to perform by law, rule, regulation, or condition of employment. While the standard of the proceeding may not be exactly the same as the present proceeding, the testimony presented is relevant to our decision.

Claimant also presented the relevant testimony of witnesses relating to the material facts of this case given in a hearing before the Illinois State Police Review Board in regard to disciplinary proceedings against Captain William Collins.

From the sworn testimony aforesaid, we find the following facts:

(a) On May 4, 1989, Special Agent Gary R. Degelman was on active duty in DCI zone 14 of the Illinois State Police at Macomb, Illinois;

(b) Master Sergeant James Comrie was advised by Special Agent Larry Knicl that a confidential source would be available during the afternoon of May 4, 1989, for the purpose of attempting to purchase narcotics at 70 N. Yorktown, Macomb, Illinois;

(c) Captain William Collins, the commanding officer of the DCI zone 14, was residing in Macomb, Illinois, in an apartment at 10 Richmond Road in the Georgetown Apartments, less than 200 feet from the residence of Mark Herrick at 70 N. Yorktown, Macomb, Illinois, and was planning to move to a house at 108 Barsi Street, Macomb, Illinois, after working hours on May 4, 1989;

(d) During the afternoon of May 4, 1989, Master Sergeant James Comrie, in consultation with other special agents, formulated a plan to use the moving of Captain Collins' household furniture and effects as a cover for a close surveillance of the suspect's residence at 70 N. Yorktown Road, Macomb, Illinois;

(e) During the afternoon of May 4, 1989, Master Sergeant James Comrie assigned Special Agents Gary R. Degelman, Larry Knicl and John Liggett, officers under his command, to duties in a narcotics investigation of three suspects, including one Mark Herrick who resided at 70 N. Yorktown Road, Macomb, Illinois;

(f) Master Sergeant Comrie then directed Special Agent Degelman to drive him to a Macomb bank where Sergeant Comrie cashed an official advance funds check in the sum of $2,000 to provide funds for the purchase of the narcotics;

(g) Master Sergeant Comrie decided to use a pick-up truck of the Illinois State Police as one of the surveillance vehicles because it was equipped with a two-way State police radio and would blend into the cover activity of moving furniture and personal property from the apartment near the residence of the suspect;

(h) Captain Collins returned from Quincy, Illinois, at 2:45 p.m. the afternoon of May 4, 1989, and after being advised of the plan, approved the surveillance plan previously formulated, whereupon the captain, Master Sergeant Comrie and Special Agents Degelman and Liggett began moving furniture and other household goods from the 10 Richmond Road apartment to 108 Barsi Street, Macomb, Illinois, during which time the suspects were observed entering the residence at 70 N. Yorktown Road;

(i) Before the buy, a second surveillance meeting was conducted at which time Captain Collins advised that he had seen suspects entering 70 N. Yorktown Road while he was returning to the second surveillance meeting in which Master Sergeant Comrie assigned Special Agent Degelman the duty of riding in the surveillance truck and to be in the closest surveillance position to the Herrick residence and other special agents were given their duty assignments as well;

(j) Special Agent Knicl was assigned the duty of attempting to make a hand-to-hand purchase of narcotics from the suspect at 70 N. Yorktown Road, Macomb, Illinois, to be paid for from a portion of the official advance funds which Master Sergeant Comrie and Special Agent Degelman obtained from the bank in preparation for the planned police operation. Inspector Shirey was assigned the duty to transport the confidential source to his undercover car and adopt a roving surveillance position in support of the narcotics investigation;

(k) After the duty assignments were made, Sergeant Comrie and Special Agent Degelman left 108 Barsi Street and returned to 10 Richmond Road where they loaded a TV set, a chair, and two metal shelving units in the bed of the State police truck, and the vehicle was then parked on North Yorktown Road near the front of the Herrick residence. Since the suspects had previously been observed entering the residence at 70 N. Yorktown, Sergeant Comrie then repeatedly attempted to reach Special Agent Knicl by State police radio to advise him to proceed with the planned narcotics purchase;

(l) Sergeant Comrie and Special Agent Degelman received no responsive communication from Special Agent Knicl, and after a time, Sergeant Comrie concluded that radio communication was ineffective because their location was in a deep valley on the westerly side of Macomb, Illinois. Comrie decided to move to a higher location and drove the truck out of the valley up a hill to the east. On May 4, 1989, gusty winds were blowing from 12-22 miles per hour at Macomb, Illinois. At that time a gust of wind blew one of the metal shelving units out of the bed of the pick-up truck. They stopped and Special Agent Degelman placed the shelving unit back into the bed of the truck and advised Sergeant Comrie that he would ride in the bed of the truck in an effort to stabilize the load;

(m) Communication with Special Agent Knicl was achieved after the State police truck reached the high ground. The sergeant then directed Knicl to proceed to 70 N. Yorktown Road and notified Inspector Shirey, another surveillance officer, that he had moved the truck from the close surveillance position and directed Shirey to move from his roving surveillance position to the primary position where the pick-up truck had been parked;

(n) Sergeant Comrie and Special Agent Degelman performed the roving surveillance duties initially assigned to Inspector Shirey and while driving in the vicinity of West Jackson Street in Macomb, Illinois, on May 4, 1989, at 4:00 p.m., another gust of wind caused the shelving units to be blown about, at which time Special Agent Degelman, who was crouched down in the bed of the surveillance truck, endeavored to keep the shelving units from blowing out of the bed of the truck at which time he accidentally fell backwards from the bed of the surveillance truck and struck his head on the pavement, thereby incurring severe closed head injuries including a severed brain stem which resulted in his death;

(o) The narcotics purchase from the suspect was accomplished shortly after 4:05 p.m. on May 4, 1989, when Special Agent Knicl entered the Herrick residence. The accident, which occurred during the roving surveillance, occurred a few minutes before Special Agent Knicl entered the Herrick residence. The hand-to-hand narcotics purchase resulted in a conviction of Herrick;

(p) Captain Collins was suspended for 60 days for his actions;

(q) That Captain Collins violated the rules of conduct of the Illinois State Police by authorizing Illinois State Police officers to participate in the move of his personal

belongings while on Illinois State Police time and while utilizing an official Illinois State Police vehicle;

(r) That the officers, including the decedent, were engaged in surveillance activities in aid of a drug enforcement buy;

(s) That the route taken by the truck just prior to Agent Degelman falling from the truck was exactly the same route being taken to deliver the furniture to Captain Collins' new apartment.

It is apparent to the Court from the sworn testimony provided by Claimant that there are no material issues of fact. Even though Special Agent Degelman was moving the property of Captain Collins in violation of rules of the Illinois State Police, he was doing so pursuant to orders and as part of a drug surveillance. There is no question that as part of the surveillance, Agent Degelman was carrying out the ruse of being a mover of personal property. It is impossible to separate the two activities as the Respondent argues because the two activities were so interrelated. However poorly thought out the plan, however much Comrie and Collins must accept their role in the death of Agent Degelman, the fact remains that Agent Degelman was on duty and doing his duty as ordered. We find there are no material issues of fact and that Special Agent Degelman was killed in the line of duty albeit a duty in violation of department rules and regulations. The Claimant is therefore entitled to summary judgment.

We find that there is nothing in the circumstances to indicate that Special Agent Degelman's death was caused by willful misconduct or intoxication. He did not order the conduct. It was ordered by his superior. We further find that the foregoing circumstances fall within the terms and provisions of the Law Enforcement Officers

and Firemen Compensation Act, *supra*, and the facts reported herein comply with the requirements for an award under the Act.

We must note for the record that our review does not find a death certificate for Special Agent Gary K. Degelman filed with the Court. This is a requirement of the Court for an award. We hereby direct Claimant to file a certified death certificate with the clerk of the Court within 21 days. Upon Claimant filing the death certificate, we will again take up the cause and enter an award if the cause of death is shown to be the injuries sustained on May 4, 1989.

## ORDER

FREDERICK, J.

This Court entered its opinion on May 23, 1995. In the opinion, the Court withheld making an award until Claimant filed a death certificate for Gary R. Degelman. The appropriate death certificate was filed on June 13, 1995.

Therefore, it is ordered that Claimant, Karin L. Degelman, is awarded fifty thousand dollars ($50,000) pursuant to the Law Enforcement Officers and Firemen Compensation Act.